Good morning. Good morning. You may proceed. You may please the court. My name is Kristen Cope and I represent the appellant, Mr. Lauren Robinson. Mr. Robinson is currently serving a minimum sentence in a Michigan prison of twelve and a half years, but constitutional protections should have limited that minimum sentence to no more than six. The Attorney General in this case does not dispute that the sentencing judge applied offense variables to more than double Mr. Robinson's mandatory minimum sentence range based only on judge found facts that were never found by the jury. Because the judicial nature of these findings is uncontested, all that remains for this court today is an issue that's a simple question of law. Whether the Supreme Court's holding in Eleni prohibited the use of judge found facts to increase Robinson's statutory mandatory minimum sentence range. The Attorney General is asking this court to reach multiple holdings that are contrary to Eleni and to the Michigan Supreme Court's own interpretations of Michigan law. I'd like to address two of those points today. The first is that Eleni's clear holding and rationale invalidated the very sentencing process used to double Robinson's mandatory minimum sentence range. And second, the statute at issue here is exactly what Michigan law says it is. It is a mandatory minimum sentence, not merely a parole provision that is free from constitutional scrutiny under Eleni. First I'd like to... Did Eleni deal with a range of mandatory minimums or just a minimum sentence? Your Honor, Eleni's entire holding was about ranges, yes. In fact, you'll note that in Eleni, the Eleni defendant had a minimum potential sentence of five years. The sentence he ultimately received was seven years, which was within the range of permissible sentences under a proper approach. But the Eleni court held that a constitutional violation occurred because the problem was not the number or numbers chosen as a sentence. The problem was that the minimum sentence possible, the shortest sentence in the range to which he was exposed, had been raised without a jury finding. So the bottom of the range was raised. That's the crucial violation. Correct, Your Honor. Because it was based on judge-made facts. Absolutely, Your Honor. In fact, Eleni held that, and I'm quoting, the legally prescribed range is the penalty affixed to the crime. Eleni was not concerned with the penalty ultimately imposed, whether that be one number or two. Eleni said that if the floor of the range that a person is exposed to is raised... Am I right that that is when it is mandatory, when it is, sometimes the phrase used, it is not bookerized? Absolutely, Your Honor. Yes. Obviously, and the State of Michigan, we all know after this, the fact, has recognized that this very system used on Mr. Robinson was unconstitutional under Eleni and has fixed the system for later prisoners by making it fully discretionary. But it's undisputed that in this case, the sentence applied to Mr. Robinson... If we were to rule in your favor, this would not, in effect, be important going forward. It's important for some potential group of people who were sentenced or who were tried in this period before Lockridge? That's exactly right, Your Honor. Between Eleni and Lockridge, really? Yes, Your Honor. Mr. Robinson is simply asking this Court to correct a fundamental constitutional error that occurred in his case that the State has since correctly remedied for future defendants in the State of Michigan. I may correct myself that it's not so much that the trial happened after Eleni because it didn't, it's because it was still on appeal by the time of Eleni. That's right, Your Honor. So the relevant, in effect, people are people whose cases did not become final before Eleni. Yes, Your Honor. And I'll note that the District Court, in denying habeas relief here, incorrectly applied Harris, the Supreme Court holding in Harris, and incorrectly held that that had to still apply to Mr. Robinson's case because he was sentenced prior to Eleni. But the clear rule in these habeas proceedings is that if his conviction was not final on direct appeal prior to the outcome of Eleni, then the Eleni rule must be analyzed under the habeas standards as applied to Mr. Robinson. And here, Eleni came out actually before both the Michigan Court of Appeals and the Michigan Supreme Court, considered Mr. Robinson's direct appeal, but neither of them even acknowledged the existence of Eleni in denying his request for relief on its very basis. They didn't acknowledge it. When we talk about AEDPA, you know, there's sort of two strings to the bow, directly contrary and unreasonable application. I take it we can't be talking about unreasonable application because they didn't apply it. Precisely, Your Honor. So we have to make a decision strictly on directly contrary. Precisely, Your Honor. The standard that is slightly more deferential of unreasonable application or the fair-minded jurist standard only applies when the state court acknowledged the controlling Supreme Court precedent and simply applied it differently. Here, we actually have the opposite, which has happened, which is that the standard is that clearly established, if it's contrary to clearly established federal law, then habeas relief is required. And the Supreme Court has said that that happens when the court applies a rule different from that applied in the Supreme Court case. Here, Eleni's rule was very clear. Any fact used to mandatorily, to your point, Your Honor, increase a defendant's minimum sentence range must be submitted to a jury and found beyond a reasonable doubt. The court did not stutter. It held that that rule applies to any facts that alter the prescribed range of sentences to which a defendant is exposed. The Michigan court, in considering Mr. Robinson's argument, did not actually do a separate analysis of his argument. Instead, the Michigan Court of Appeals, despite the existence of Eleni, blindly relied on prior Michigan case law, which itself relied on Harris's proclamation that the Constitution permits courts to impose higher minimum sentences based only on judge-bound facts. How about the application to the Michigan Supreme Court? I mean, that was, wasn't that filed as well? Yes, Your Honor. Okay, and did they cite Eleni in the application? I'm sorry? Did the petitioner, the appellant, cite Eleni in the application for leave to appeal to the Michigan Supreme Court? I don't believe so, but I'm not positive. Because Eleni had come down before the Supreme Court denied the appeal, right? Correct, Your Honor. And I will say that Mr. Robinson raised, I believe that, and several other grounds for ineffective assistance of the counsel in this case, but those are not under review by this court, so. Okay, I mean, my question, if we get back to epidefference, I mean, I thought the Supreme Court now established a presumption that if a Supreme Court case was presented to the state court, even though the state court did not explicitly rule on it, that if it was presented to them and they denied it, that that was a ruling, is it? Your Honor, I'm sorry, the Michigan Supreme Court ruled on it, but I don't believe he actually raised Eleni expressly. This argument was raised before the Michigan Supreme Court, but I don't believe Eleni was put forward. And the rule in habeas review is that this court must look to the reasoning in the last reasoned opinion from the state court. The last reasoned opinion that we have is actually the Court of Appeals decision, because the Michigan Supreme Court didn't address anything on the merits. It simply approved the ruling of the Michigan Court of Appeals. So all we have is a decision that relied on prior Michigan case law, which itself relied on Harris, and Harris' rule is directly contrary to that in Eleni, and itself was expressly overturned by Eleni. This is one of those rare cases where the outcome is contrary to clearly established federal law. But for us to make the decision whether it's contrary to clearly established federal law, we can't look to the Michigan Supreme Court case, can we? Because that's a state court decision. And are you referring to the Lockridge decision? Sure. Your Honor, the court cannot, for determination of clearly established at the time of the decision of Mr. Robinson's case, the court cannot look to Lockridge, because Lockridge came out after this decision was made by the Michigan Supreme Court. However, the court can now have the benefit of Lockridge's decision, the highest court of the state, in interpreting its own state law. State law, but not federal law. Correct, Your Honor, of course. This court is the arbiter of that, of federal law. But the important thing here is that the federal law was clearly established here. What purpose would Lockridge serve other than, does Lockridge say that Michigan has a guided system? Is that, I mean, what are you looking to Lockridge for? It's nice that Lockridge comes to the same conclusion that you want us to come to. But aside from that, does it cut either way? Your Honor, I think Lockridge does nothing but support Mr. Robinson's argument. It is not necessary for this court to consider Lockridge at all, in our opinion, to decide that habeas relief is required and that the ruling in Mr. Robinson's case was contrary to clearly established federal law, based just on the rationale and holding of Eleni itself. I mean, that's what your purpose is. I mean, other than Lockridge, I'd say it's kind of persuasive in the sense that another group comes to the similar conclusion that you want us to, but it's not, it is not something that directly influences our outcome. Correct, Your Honor. That's right. We do cite to Lockridge, though, for the proposition that the Attorney General's brief does argue throughout that actually takes positions that are contrary to what the Michigan Supreme Court has now said Michigan law means. For example, interpreting what Michigan law says is a mandatory minimum sentence, the Attorney General's brief has taken the position that it is not a sentence at all, it is merely a parole provision. Lockridge rejects that outright in interpreting its own law and says that it is, in fact, a sentencing provision. Okay, but Lockridge kind of cuts both ways. I mean, the majority in Lockridge, the five justices support your view of Eleni, but you still have two justices, Justice Markman, and I'm not sure who joined him, but you have two justices which disagreed with that, and under habeas, the federal law has to be clearly established and essentially beyond dispute, but because you have two justices of Michigan that are disputing it, isn't that evidence that maybe it's not clearly established? No, Your Honor, it's not, for a couple of reasons. The first is that, as I said, because the Michigan courts here did not grapple with Eleni at all in Mr. Robinson's case, the standard that this court is to apply is not the deferential unreasonable jurist standard, which would be more deferential and ask the court to look at whether reasonable jurists could disagree on this. The standard is more clear that on its face is the rule that's being applied in Eleni different from the rule that was applied in Mr. Robinson's case, and as I said, the rule itself in Eleni, over and over again, is if you have a range and the bottom of that range is mandatorily moved without a jury finding, it violates the Sixth Amendment. It's a very clear rule. Does Justice Markman disagree with that? Your Honor, the dissent in Lockridge made basically most of the arguments that the Attorney General makes here today. Okay, but because you've got a disagreement with the Supreme Court, is that evidence that maybe it's not beyond debate? I see my time has expired. No, go ahead. Sure. Your Honor, it is not evidence that they may disagree, and the reason for that is because the court's decision was primarily based on the idea, I'm sorry, the dissent was based on the idea that this was really a parole provision, and in fact, the Attorney General's brief creates this confusion by saying that, for example, and I'm quoting from their brief, that the court could have imposed a flat 30-year sentence for extortion and required Robinson to serve every day of that. So their argument and the dissent in Lockridge asserts that the real sentence here is the maximum number imposed. That's the only real sentence. However, that statement is not accurate because under Michigan law, it would be unlawful for the court to simply impose the maximum number, and the statute says that when a person is shall not fix a definite term of imprisonment. They must fix a minimum and a maximum because they're both parts of the same thing. A person has to serve the minimum before they're eligible for parole, so it's not just a parole provision. I mean, you've got to serve the minimum before the parole board even kicks in. Precisely, Your Honor, that's right, and that's why we say it is truly a sentencing provision, and when the floor of a minimum sentence is moved, the punishment to which a person is charged, and that is why this is a sentencing provision. It squarely falls within the clear holding of Eleni and habeas relief is required. Okay. Any further questions? Did you reserve rebuttal? Yes, Your Honor. Three minutes. Three minutes. Okay. Good morning. Good morning, Your Honors, and may it please the court, Linus Banghart Lynn, Assistant Attorney General for the State of Michigan, on behalf of the Respondent Warden, respectfully requesting affirmance. I'm going to address a few things that my sister counsel said, and I'm going to start at the end, which is where my brief was quoted saying that the Michigan trial court could have imposed a flat 30-year sentence. Unfortunately, a portion of that sentence was elided from the quote. The trial court could, consistent with the federal constitution, have imposed a flat 30-year sentence for extortion, and that's true. Michigan doesn't need to provide parole. We didn't say, of course, that under Michigan law we could not simply deny parole. Michigan could have that under a different system than the one Michigan has. Right. Michigan could have a system where it doesn't have parole. Michigan could have a system where parole is determined. Or it could have a system where every crime has only one punishment. Exactly. But that's not what we're arguing about. It's not how strong, how tough it is. It's whether it has this guided feature. Exactly. And the Michigan legislature has decided that it's going to delegate to the trial courts the decision about how much of a prisoner's sentence it's going to serve. Now, I disagree with... You're saying how much of the sentence he's going to serve? How much of the sentence he's going to serve. He received a 30-year sentence. How much he's going to serve, sorry, before becoming eligible for parole. So the parole board... The legislature has set the maximum, and then their argument is that the judge finds facts of the offense variables that set the minimum. And that's why they say Eleni's violated it. Exactly. Because we call it a minimum sentence in Michigan, and what this case really comes down to is a question of form versus substance. I believe if Michigan's system was set up so that the judge at sentencing says, I sentence you to 30 years, now go down the hall and you will be informed when you'll become eligible for parole. I don't think anyone would blink an eye. But because we call it a minimum sentence, because it takes that form... But it is a minimum. It is a minimum. I mean, the prisoner is not subject to the parole until he serves his minimum, right? Exactly right. But the United States Supreme Court has never held that the Sixth Amendment right to a jury trial relates to how much of a sentence you need to serve before becoming eligible for parole. But what does it have to do with parole? Because it's about the minimum that... Forget the parole board. Before the judge found the facts, and help me if I've got the numbers wrong, but approximately, before the judge found some additional facts, the Michigan system as set up by the legislature would have been his minimum was six years or so. Then the judge... Then you'd be eligible for parole. All right. I mean, I say this respectfully, but I'm being told by opposing counsel, forget about parole. But the only effect a minimum sentence has in Michigan is parole board jurisdiction. So if you are considering parole... Well, wait a minute. If you don't... If your minimum sentence... All right. So that you're saying that there's a possibility to get out after, let's say, six years, and after the judge finds these facts, you have no possibility to get out until 12 years, and you're saying that doesn't matter. The United States Supreme Court has never held that that implicates the Sixth Amendment right to a jury trial. And in fact, they have held in a different... Now, it's a different procedural circumstance, but again, this is about form versus substance. In substance, the United States Supreme Court has held that a state employee can say, I'm going to delay your parole eligibility based on facts I found not submitted to a jury. That was Wolf v. McDonnell. Now they say that's a parole case, that's not a sentencing case. It doesn't matter. A state employee says, I believe you have done this thing. It's not been submitted to a jury. It's not been found beyond a reasonable doubt. But based on this decision, based on this fact-finding, your parole eligibility date is moved to the future. That's all that happened here. So if the... If in Eleni itself, the state had had a system which simply said, whether you get anything less than the maximum is up to the governor, then it would have been fine? Well, Eleni was about the maximum sentence. I mean, it was called a sentence, but it was a maximum sentence. It was a sentence... I thought Eleni was a minimum sentence. No. It was the minimum range. It was the... That's the problem. This minimum is being used in two different ways. The sentence that was imposed in Eleni was a maximum sentence. It was the sentence at the end of which the defendant gets to walk free from prison. Now, the number in question was the minimum range of the range that was used to determine that sentence. The violation was that the minimum was jacked up. Right. The minimum of the range to set a maximum sentence. And effectively, they said that once you did that, then it was unconstitutional, regardless of what the judge ended up doing. Right. Because it restricted... The analogy here is it's the same thing, except you're saying, well, by the way, the parole board could make you serve more or less above the minimum. Exactly right. All right? And so how is that different from the fact that in Eleni, the Supreme Court says, doesn't matter what the judge actually did, doesn't matter how much time you're really going to have to serve, as long as they've jacked up the bottom, and we know you've got to serve that much. Right. Here, as I take your argument, you're saying, well, yes, they jacked up the minimum, but that doesn't matter because they could stay in for a long time based on the parole board. Is that a fair statement of it? I think it is. All right. And so why is the parole board different than the judge in Eleni? Because he's not establishing any right to release. There's no right to parole. There's no federal constitutional right to parole at all. And in Eleni, what the error was... The guy isn't complaining that he doesn't get paroled. Right. He's complaining that the bottom of his range was jacked up. Just as in Eleni itself, in effect, he wasn't complaining that the judge sentenced him at the maximum. He was complaining that the bottom of his range was jacked up. Well, and in Eleni, he didn't sentence him at the maximum. He sentenced him at the minimum that he was allowed to. But you just said he sentenced him at the maximum. No, he said a maximum sentence. I mean, it wasn't called a maximum sentence. That may matter. He sentenced him to seven years because he didn't have the discretion. And the Supreme Court said, well, based on the jury's verdict, he should have been allowed to sentence him at five years. But that five-year sentence or the hypothetical five-year sentence or the actual seven-year sentence establishes an entitlement to release. That is his top, that five years or that seven years or the 15, which I think was the maximum he could have done, is at that point, Eleni gets to walk out of prison. Twelve and a half years, six years, whatever it is for Mr. Robinson, he doesn't get to walk out of prison at that time. Thirty years is where he gets to walk out of prison and there were no judge-found facts to set this 30-year sentence. The maximum sentence under Michigan law is an analog to the sentence under federal law, which was at SU and Elaine. The minimum sentence under Michigan law has no analog in the federal system because it's a parole provision. That's all it is. It is called a sentence, but all it does is establish when the parole board gets jurisdiction over the prisoner. And the United States Supreme Court has never held that that determination involves the Sixth Amendment right to jury trial. And in fact, in Wolf, again, different procedural circumstances, it held the opposite. It said you do have due process rights, right? You can't just arbitrarily push back somebody's parole eligibility date, but you don't have to impanel a jury. And that's all that happened here. They pushed back his parole eligibility date, they didn't impanel a jury to find the facts, and there is no U.S. Supreme Court case that deals with it. The only Supreme Court case that dealt with it was McMillan, and obviously there's some disagreement about the status of McMillan. The reasoning of McMillan was undermined by Elaine. The result of McMillan was correct because there were two bases, just like in this Court's decision in Montes, which we also cite. Montes says, for one thing, you're talking about raising a floor rather than a ceiling. Harris rejected that, so you lose that way. And then in a paragraph that begins, moreover, and that's on, I can give you the page of Montes, at 497, it says, moreover, and then it explains this different basis of reasoning, which is about Michigan's indeterminate sentencing scheme, where the bottom number is, does not establish an entitlement to release. That's published Sixth Circuit precedent. That was not discussed. It wasn't an issue in Elaine because Elaine is about the federal system, which is different. And so that was not overruled by Elaine. The reasoning at that part of Montes was not called into question by Elaine. That would support the result in McMillan, which I think is why the U.S. Supreme Court never expressly overruled McMillan, even as it expressly overruled Harris. It discusses Harris-McMillan, Harris-McMillan, Harris-McMillan. We overrule Harris. The dissent says you overruled McMillan, the concurrence says you overruled McMillan, the sister circuit said you overruled McMillan, a state court says, so I recognize I'm in the minority, but until five justices of the U.S. Supreme Court say McMillan was wrong, I think I'm okay. So we stand on Montes, we stand on McMillan, we stand on Wolfe. I'm going to move a little bit to the remedy for as much as my opposing counsel accuses me of trying to attack Lockridge, there are two bases under which I think if we do lose this case, Lockridge has to be upheld, which is the remedy, bookerizing. I don't understand opposing counsel's argument that he should be subject to a sentence with the guidelines scored at zero. Michigan decided, just the same way as the U.S. Supreme Court decided in Booker, to bookerize the guidelines, to make them advisory. So if he is to be resentenced, his guidelines should be scored as the Michigan legislature commanded, and the guidelines should be advisory. That's the federal remedy, that's the state remedy. You just send it back to a judge and say, okay, now, apply the new. And that brings to the second point, which is whether a full resentencing is required. The U.S. Constitution does not require a full resentencing. Four circuits decided, this circuit did not, but four circuits and the state of Michigan decided we can do a What difference is there between a, quote, full resentencing and asking the same judge to say, would you have given the same sentence? That just seems sort of odd to me that, are you saying that the judge shouldn't think about what he wants now? The judge has to think back seven years and even, so then that could cut either way. That is, he could say, well, now I think he's a bad guy and I want to give him 15 years, but if I think back to what happened seven years ago, I should only give him five years. But that's kind of a silly way to do it, isn't it? Well, it saves a lot of resources, because a resentencing requires the victims to be notified, it requires the defendant to be written out, it requires the court to prepare a new sentencing investigation report, it allows the court to consider for better or for worse, and actually requires the court to consider post-offense conduct, post-sentencing conduct, everything he's done in prison that might help him, that might hurt him. There's a lot of resources involved in a resentencing, because it is de novo. A Crosby remand, you say, look, think back seven years. If the guidelines had been advisory, would you have done anything different? Now maybe the judge says, I don't know, I can't remember that far, I'm going to vacate the sentence in order of resentencing. In our court, the standard practice is when a sentencing judge applies the wrong law, our normal remedy is to remand for full resentencing. Is that not our customary remedy? Right. Oh, absolutely. And if this were a- Okay, I know that's not what the Michigan Supreme Court did, but we're talking federal here, and we're dealing with federal law, and why, okay, even though Michigan might do it a different way, why would we follow, we're not compelled to follow Michigan Supreme Court's remedy, are we? I think that as long as Michigan's remedy doesn't violate, this court's brief in this case is to make sure the Constitution isn't violated. And if Michigan's remedy doesn't violate the Constitution, I don't think that it makes sense to set Mr. Robinson apart from his fellow Michigan prisoners and say, well, you few hundred got a Crosby remand, you took a different route to relief, and so even though a Crosby remand would be consistent with the Constitution- How long ago was it that Mr. Robinson was originally sentenced? What year was it? That I don't recall. I know that his appeal became final in 2013. I don't know actually what year it was. I mean, really, because of the time frame, it would be difficult, would it not, for the sentencing judge to, as Judge Boggs said, to look back over five, six, seven years now, if I had known the right law, what would I have done? He may not even have the same judge either. I mean, judges- What was 2011, I think? That's right. I mean, the judges come and go, and you may not even have the same sentencing judge, and then if you don't do that, I would think that you'd have to have a full re-sentencing. I think that question would be best answered by the judge himself, because the judge could say, I remember this case well, I remember that I thought the sentence was the appropriate sentence, or the judge might say, and as I said, if it's a successor judge, the judge can say, I don't know what this judge would have done, we need re-sentencing, or I don't remember what I would have done, we need re-sentencing. But that's, I don't think it is for this court to assume, well, this judge couldn't possibly remember a seven-year-old case, and therefore, even though the Constitution doesn't require it, and even though it would set Mr. Robinson apart from every other Michigan defendant, we're going to order a separate remedy. Suppose we simply said, we remand for re-sentencing, period, and it leaves it then to the state judge to decide what the right standard is. Well, no, because then the state judge would still have to re-sentence, right? A Crosby remand isn't a re-sentencing. If this court says, we remand for proceedings not inconsistent with this decision and the United States Constitution, I think that would be, I mean, obviously, that would mean we lose, so I'm not for it. Have we ever done a Crosby remand before? No, I don't believe so, because... Okay, well, why would we start here? Because this is a state case, and under ADPA, the policies governing ADPA are comity and federalism in respect for state court judgments, and where the state has decided that the remedy is this, and that remedy doesn't... If we determine that the state court has violated the federal law, it seems like the issues of comity are not quite there. I mean, we're finding a constitutional violation, and what we're doing is we're trying to remedy it. I understand. Can I answer briefly, because I'm running out of time? Again, I think that to set Mr. Robinson apart from other defendants who received a constitutionally permissible remedy, it would be... I believe comity is still, even if this court disagrees with what the Court of Appeals did on the violation, the remedy set forth in Lockridge still is entitled to comity and respect by this court. Any further questions? Thank you. Thank you. All right. Ms. Cope, you've got three minutes for rebuttal. Yes, Your Honor. May it please the Court, I'd like to address three things that the Court brought up with my opposing counsel just now. The first goes to the idea of the minimum range. Alaney itself said that elevating the low end of a sentencing range heightens the loss of liberty associated with the crime, because the defendant's expected punishment has increased as a result of the narrowed range. That's why this is not a parole provision. It's a sentencing provision, because the minimum sentence a person is exposed to is the minimum time a person will serve in prison. It is a sentence. It is the amount of time that they will serve in prison. Isn't it his time, Mr. Robinson's time, 30 years? No, Your Honor, it's not. When he was sentenced and the time he was exposed to... Under Alaney's rationale that I just read, the time he is exposed to in the range... And again, the Court was concerned with the range a person is exposed to. And the minimum time that he could be exposed to serve in prison went up from 36 months to nearly triple that minimum number. And that was where the violation occurred, was as soon as the range was moved, long before the actual sentence was even imposed. And that's true under all Michigan law. Alaney said that the Sixth Amendment protections are in place so that a person is entitled to know the range of punishment they're exposing themselves to if convicted of a crime. Under the Michigan system that Michigan has chosen to impose by statute, a prisoner, in Mr. Robinson's shoes, will know three things. One, you will be sentenced to a minimum sentence, that you will serve in prison, chosen from a statutory range. Second, you then... And he's saying... I mean, I may have misunderstood him, but that just says you will be eligible for parole. It doesn't say you're going to get out. Of course not, Your Honor. But it is certain that you will serve a sentence in prison of the minimum number. You will serve that many years in prison. His argument... Separately... I mean, you used the term, and I'm not saying he's right or wrong, but at least to couch the argument, you used that he's changed what he's exposed to. His argument is that what you're exposed to is always the statutory maximum. Your Honor, that argument was rejected in Alaney. That was the reasoning behind Apprendi, that a person is always exposed to the maximum. That's your ultimate exposure. And it doesn't matter if the judge picks something below that, because you're always exposed to the maximum. Alaney overturned that rationale and said that the same rule must apply to the minimum number that you are exposed to, the floor of your potential sentencing that could be chosen from. And that's why an individual under a system like Michigan that chooses to impose a minimum and maximum statutory scheme, that has to be respected from both a Sixth Amendment and a due process perspective. A person who serves their minimum sentence is entitled by Michigan statute to then have parole consideration proceedings. The state is conflating two very different things, rights in a parole proceeding where you're not entitled to be granted parole and your rights to a parole proceeding. Mr. Robinson was supposed to be eligible for parole proceedings, supposed to have completed his minimum sentence on these convictions a year and a half ago. And that is why it is required for him to receive habeas relief. And I will note, just as a brief thought, that the Crosby remand that the state continues to urge is a process that this court has already expressly rejected and said that it does not apply and will not apply the Crosby remand procedure. And as Judge Griffin noted, the appropriate response is a remand for full recidivism. Did we reject it in the habeas case? Yes, Your Honor, I believe so. This court rejected the Crosby remand procedure in U.S. v. Milan, which was a 2005 case.  That would be a federal case, not a state case. That is correct, Your Honor. But it is a habeas case. The question was, has there been a question where we invalidated a Crosby remand in a state case? I think that is right, Your Honor. However, I will also note that Crosby itself arose under a direct appeal and a plain error review for unpreserved claims, neither of which is true here. Okay, how about their argument that if we don't do the Crosby remand, that Mr. Robinson is going to be treated specially and other people in his situation will, contrary to the state defendants, and it just, you know, it's almost a denial of equal protection or whatever to treat people so differently that we ought to, comedy and everything else, follow the state. I mean, how do you respond to that? Your Honor, I respond to that because Mr. Robinson has indeed been treated differently, but that's because he's been harmed more than most defendants in this situation. Most defendants who are resentenced by the Michigan system have their sentence recorrected through resentencing long before they've already served their minimum sentence. Because Mr. Robinson was denied by the state court and has now been in jail already 18 months longer than he was supposed to be entitled to parole proceedings on these convictions, he's already been harmed in an irreversible way. And therefore, even a true remand for resentencing will only partially fix the harm in this case. The court cannot, as a practical matter, issue what should have been an eligible minimum sentence. The court can't sentence him to a minimum sentence of 36 months because he's already served 93. So he's already been harmed, so we're asking this court to fix the harm. But he hasn't been having a minimum sentence. He has been rendered eligible for parole maybe in 36 months, but as counsel for the affiliate says, you know, somebody in the Michigan parole system can say, well, I think this, this, and this, and we're not going to let you out until 2025. That is true, Your Honor. They could. He's not entitled to be granted parole. But that's what you just said. He's already served all his, the minimum sentence. He hasn't served his minimum sentence, has he? Your Honor, he has served the length of time, even on the maximum end of the appropriate range that he should have had to serve before being statutorily entitled to parole consideration proceedings. And that's a due process concern. It's not that he would be granted it, Your Honor, but he has been improperly denied for 18 months now the right to those proceedings. And we're asking this court for a remand for resentencing so that that can be corrected. Any further questions? Judge Boggs? Judge Hood? Thank you, Your Honor. I noticed that you're appointed by the, pursuant to the Criminal Justice Act, and we'd like to thank you for your service and also for taking this case. Thank you, Your Honor. Okay. It's my understanding that that completes the oral argument docket for this morning.